Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARIA A.,

                              Plaintiff,

                    v.

COMMISSIONER OF SOCIAL SECURITY,


                              Defendant.

Civil Action No.: 21-19431 (ES)

OPINION

SALAS, DISTRICT JUDGE

Plaintiff Maria A. ("Plaintiff" or "Claimant") appeals the decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* (*See* D.E. No. 1). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.    BACKGROUND

On March 8, 2016, Plaintiff filed an application for DIB,[1] alleging disability beginning on February 1, 2010. (R. at 173–79).[2] She claimed disability based on several impairments, including a back condition, arthritis, and a knee condition. (*Id.* at 194). Her application was denied initially

---

[1]    The Court notes that on March 8, 2016 Plaintiff also applied for supplemental security income ("SSI") under Title XVI of the Social Security Act, alleging disability beginning on February 1, 2010. (D.E. Nos. 4-2 through 4-12, Administrative Record ("R.") at 180–87). The Social Security Administration found that Plaintiff was disabled beginning on March 1, 2016 and thus found that Plaintiff was entitled to SSI. (*Id.* at 63, 76 & 79). As such, Plaintiff only requested reconsideration of the Social Security Administration's decision that found Plaintiff ineligible for DIB. (*Id.* at 80). As such, Plaintiff's application for SSI is not the subject of the present Motion.

[2]    Plaintiff later amended her alleged onset date to April 1, 2014, at the hearing before the Administrative Law Judge ("ALJ"). (R. at 10).

on May 9, 2016, and on reconsideration on June 28, 2016.  (*Id.* at 10, 90–94 & 104–06).  On March 28, 2018, an ALJ held a hearing, at which Plaintiff and a vocational expert testified.  (*Id.* at 27–60).

On August 9, 2018, the ALJ denied Plaintiff's application for DIB.  (*Id.* at 7–18) (hereinafter the "2018 decision").  The ALJ held that Plaintiff was not disabled "as defined in the Social Security Act, at any time from April 1, 2014, the amended alleged disability onset date, through March 31, 2015, the date last insured," because Plaintiff had the residual functional capacity ("RFC") to perform work for which there existed a significant number of jobs in the national economy.  (*Id.* at 17–18).  Specifically, the ALJ determined that Plaintiff had the RFC through the date last insured ("DLI") "to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant c[ould] frequently climb ramps and stairs, balance, kneel, stoop, and crouch; and [could] never crawl or climb ladders, ropes, or scaffolds."  (*Id.* at 14).  Relying on vocational expert testimony, the ALJ found that an individual with the above RFC could perform work as (i) a ticket tagger (approximately 90,000 jobs in the national economy); (ii) a hand packager (approximately 100,000 jobs); and (iii) a labeler (approximately 100,000 jobs).  (*Id.* at 17).

On July 29, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's 2018 decision the Commissioner's final decision.  (*Id.* at 1–6).  Plaintiff filed an appeal to the District Court on September 26, 2019.  (Complaint, *Maria A. v. Comm'r of Soc. Sec.*, No. 19-18386, D.E. No. 1 (D.N.J. Sept. 26, 2019)).  On December 30, 2020, the Honorable Claire C. Cecchi, U.S.D.J., issued an Order vacating the decision of the Commissioner and remanding the matter to the ALJ for further proceedings.  (Order at 3, *Maria A. v. Comm'r of Soc. Sec.*, Civ. A. No. 19-18386, D.E. No. 16 (D.N.J. Dec. 30, 2020) ("Order")).  Specifically, Judge Cecchi ordered

remand because (i) the ALJ failed to resolve an apparent discrepancy between Plaintiff's RFC for

light work and the weight the ALJ assigned to a state agency physician's opinion and (ii) the ALJ

neglected to consider whether Plaintiff's obesity constituted a severe impairment.  (*Id.* at 2–4 &

n.3).  As to the discrepancy with the RFC for light work, Judge Cecchi reasoned as follows:

> Dr. James Paolino, who offered one of the state agency medical
> opinions in this matter, found Plaintiff capable of standing and/or
> walking for only a total of "3 hours" in each "8-hour workday," well
> below the requirements for "light work" performance under the
> relevant regulations.  While the ALJ assigned "partial weight" to Dr.
> Paolino's opinion because it was provided "post the date last insured
> and thus remote," the ALJ nevertheless concluded that "the evidence
> received at the hearing level shows that [Plaintiff] is somewhat more
> limited than [Dr. Paolino] determined."

(*Id.* at 2) (citations omitted) (alterations in original).  Judge Cecchi noted that although the ALJ

determined that Plaintiff had the RFC to perform "light work" during the relevant period, which

generally requires standing or walking for 6 hours in an 8-hour workday, the ALJ also concluded,

on the other hand, that Plaintiff was "more limited" than Dr. Paolino determined, even though Dr.

Paolino found that Plaintiff was not capable of performing light work.  (*Id.*)  As such, Judge Cecchi

concluded that the basis for the ALJ's "light work" assessment was unclear.  (*Id.* at 3).  As to

Plaintiff's obesity, Judge Cecchi addressed the following argument raised by Plaintiff:

> [T]he ALJ erred at step two by not providing "a narrative discussion
> describing" why she found that Plaintiff's alleged pre-DLI obesity
> did not constitute a "severe impairment."  . . . Insofar as the ALJ
> made only a passing reference to Plaintiff's alleged pre-DLI obesity
> in her step two analysis [], the ALJ, upon remand should fully
> describe why Plaintiff's alleged pre-DLI obesity does or does not
> constitute a "severe impairment" under the relevant regulations.

(*Id.* at 3–4 n.3).

On June 22, 2021, after remand, a second hearing was conducted before the same ALJ.  (R.

at 405–14).  On June 30, 2021, the ALJ issued a new decision denying Plaintiff's application for

DIB for the second time, again finding that Plaintiff was not disabled at any time from April 1, 2014, the amended alleged disability onset date, through March 31, 2015, the date last insured. (*Id.* at 387–400) (hereinafter the "2021 decision"). The ALJ held that Plaintiff was not disabled, "as defined in the Social Security Act, at any time from April 1, 2014, the amended alleged disability onset date, through March 31, 2015, the date last insured," because Plaintiff had the RFC to perform work for which there existed a significant number of jobs in the national economy. (*Id.* at 399–400). Specifically, the ALJ again determined that Plaintiff had the RFC through the date last insured "to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant [can] frequently climb ramps/stairs, balance, kneel, stoop and crouch and never crawl or climb ladders/ropes/[]scaffolds." (*Id.* at 394).

In finding this RFC again, the ALJ noted that she relied "on the objective medical evidence and the claimant's testimony." (*Id.* at 398). As ordered by Judge Cecchi, the ALJ clarified the basis for her RFC assessment in relation to Dr. Paolino's medical opinion. (*Id.*). Specifically, the ALJ noted that Dr. Paolino determined that there was insufficient evidence prior to the date last insured to make a determination on Plaintiff's claim for DIB. (*Id.*). And concerning the period after the dated last insured, Dr. Paolino found that Plaintiff could perform work "at the light level of exertion, with a limitation to 3 hours of standing/walking, occasional climbing of ladders/ropes/scaffolds, kneeling and crawling and frequent climbing of ramps/stairs and crouching." (*Id.*). Another Disability Determination Services ("DDS") state agency consultant, Dr. Arthur Pirone, affirmed Dr. Paolino's findings. (*Id.*). Although the ALJ assigned "partial weight" to Dr. Paolino and Dr. Pirone's findings in her 2018 decision because both were made "post the date last insured and thus remote" (*id.* at 15), the ALJ clarified that she afforded those opinions "no weight" in the 2021 decision, because those doctors' findings addressed "the time

period after the date last insured and thereby . . . [we]re insufficient to assess [Plaintiff's] level of functioning as of the date last insured." (*Id.* at 398).

Furthermore, as ordered by Judge Cecchi, the ALJ explicitly considered Plaintiff's obesity in her 2021 decision, finding it a "severe" impairment at step two, concluding it did not meet or medically equal the severity of a listed impairment in 20 C.F.R. § Part 404, Subpart P, Appendix 1, either singly or in combination with her other impairments at step three, and explaining that it was "not, by itself, nor in conjunction with her other listed impairments, so severe as to prevent her from working" at step four. (*Id.* at 392–94 & 397). Because the RFC determination in the ALJ's 2021 decision was consistent with the RFC determination in the ALJ's 2018 decision, the ALJ relied on the testimony of the vocational expert from the initial hearing on March 28, 2018, and again found that an individual with Plaintiff's RFC could perform work as (i) a ticket tagger (approximately 90,000 jobs in the national economy); (ii) a hand packager (approximately 100,000 jobs); and (iii) a labeler (approximately 100,000 jobs). (*Id.* at 399–400).

On August 30, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's 2021 decision the Commissioner's final decision. (*See* D.E. No. 1). On October 29, 2021, Plaintiff filed the instant appeal to the District Court, seeking another review of the Commissioner's final decision, which the Court has subject matter jurisdiction to decide under 42 U.S.C. § 405(g). On January 26, 2023, Plaintiff filed a brief in support of the instant appeal. (D.E. No. 8 ("Mov. Br.")). The Commissioner opposed. (D.E. No. 16 ("Opp. Br.")).

## II.    LEGAL STANDARD

### A.    Standard Governing Benefits

To qualify for DIB, a claimant must show that she is disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]"  42 U.S.C. § 423(d)(1)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001).  The individual's physical or mental impairment, furthermore, must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.*

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920).  "The claimant bears the burden of proof for steps one, two, and four[,]" and "[t]he Commissioner bears the burden of proof for the last step."  *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof."  *Id.* at 263 n.2 (citing *Yuckert*, 482 U.S. at 146 n.5).  If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends.  *See* 20 C.F.R. § 404.1520(a)(4).

***Step One***.  At step one, the claimant must show that she has not engaged in any substantial gainful activity since the onset date of her severe impairment.  20 C.F.R. § 404.1520(a)(4)(i).  If an individual engages in substantial gainful activity, she is not disabled under the Act, regardless of the severity of her impairment or other factors such as age, education, and work experience.  20 C.F.R. § 404.1520(b).  If the plaintiff demonstrates she has not engaged in substantial gainful activity, the analysis proceeds to step two.  *See* 20 C.F.R. § 404.1520(a)(4).

**Step Two**.  At step two, the claimant must show that her medically determinable impairments or a combination of impairments were "severe" as of the date last insured. 20 C.F.R. § 404.1520(a)(4)(ii).  An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. § 404.1520(c)).

**Step Three**.  At step three, the claimant may show, based on medical evidence, that her impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 ("Listings") as of the date last insured.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant makes such a showing, she is presumptively disabled and entitled to benefits.  *Id.*  If she does not make the showing, she proceeds to step four.  *See* 20 C.F.R. § 404.1520(a)(4).

**Step Four**.  At step four, the claimant must show that she lacked the RFC to perform her past relevant work as of the date last insured.  20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the claimant lacks the RFC to perform her past relevant work, the analysis proceeds.  *See, e.g.*, *Plummer*, 186 F.3d at 428.

**Step Five**.  In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her age, education, work experience, and RFC.  20 C.F.R. § 404.1520(a)(4)(v); *see, e.g.*, *Plummer*, 186 F.3d at 428.  If the Commissioner shows that the claimant is able to perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B.    Standard of Review

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360.

Importantly, the Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006).  Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

## III.    THE ALJ'S 2021 DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged disability onset date of April 1, 2014, through her date last insured of March 31, 2015.  (R. at 392).

At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, spine disorders, and degenerative disc disease of the cervical and lumbar spine. (*Id.*). The ALJ further determined that Plaintiff had the following non-severe impairments: plantar calcaneal spurs and gallstones. (*Id.* at 393). In addition, the ALJ determined that Plaintiff's left knee meniscus tear, peripheral vascular disease, and acute conditions were non-medically determinable impairments, noting that there was insufficient evidence to suggest these impairments were present prior to March 31, 2015, the date last insured. (*Id.*).

At step three, the ALJ considered Listings 1.15 for disorder of the skeletal spine resulting in compromise of a nerve root(s) and 1.16 for lumbar spinal stenosis resulting in compromise of the cauda equina. (*See id.* at 394). The ALJ ultimately determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed by the regulations. (*Id.* at 393).

At step four, the ALJ concluded that from April 1, 2014, to March 31, 2015, Plaintiff had the RFC to perform light work, with certain exceptions. (*Id.* at 394). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; if someone can do light work, that individual can also do sedentary work. 20 C.F.R. § 404.1567(b). The ALJ found that Plaintiff could frequently climb ramps and stairs, balance, kneel, stoop, and crouch. (R. at 394). The ALJ further found that Plaintiff could never crawl or climb ladders, ropes, or scaffolds. (*Id.*). Further, the ALJ ultimately found that from April 1, 2014, the amended alleged disability onset date, through March 31, 2015, the date last insured, Plaintiff had been unable to perform any past relevant work. (*Id.* at 398–99).

Finally, at step five, after considering Plaintiff's background, RFC, and vocational expert testimony from the initial hearing, the ALJ found that there were jobs that existed in significant

numbers in the national economy that Plaintiff could have performed from April 1, 2014, the amended alleged disability onset date, through March 31, 2015, the date last insured. (*Id.* at 399). Specifically, the ALJ found that prior to March 31, 2015, an individual with Plaintiff's RFC could perform work as (i) a ticket tagger (approximately 90,000 jobs in the national economy); (ii) a hand packager (approximately 100,000 jobs); and (iii) a labeler (approximately 100,000 jobs). (*Id.* at 400). Accordingly, the ALJ found that Plaintiff was not disabled as defined by the Act at any time from April 1, 2014, the amended alleged disability onset date, through March 31, 2015, the date last insured. (*Id.*).

## IV.    DISCUSSION

Plaintiff contends that "substantial evidence exists in the administrative record to support a finding of disability" and assigns several claims of error to the ALJ's 2021 decision. (Mov. Br. at 1 & 11). To start, Plaintiff argues that the ALJ did not adequately consider Plaintiff's obesity at steps three and four of the analysis. (*Id.* at 11 & 21–29). Further she argues that the ALJ improperly adjusted the weight given to Dr. Paolino and Dr. Pirone's findings from "partial weight" to "no weight" to find the same RFC at step four of the analysis. (*Id.* at 11 & 19–21). Additionally, she argues that the ALJ failed to issue an RFC assessment with a narrative discussion describing how the evidence supports each conclusion and, therefore, reached an RFC that is not based on substantial evidence. (*Id.* at 11, 17–19 & 28–29). Overall, in assigning these claims of error to the ALJ's 2021 decision, Plaintiff argues that the ALJ failed to follow Judge Cecchi's prior remand Order. (*Id.* at 11). The Court considers each of Plaintiff's challenges to the ALJ's 2021 decision in turn.

### A.    Step Three

*First*, Plaintiff challenges the ALJ's consideration of her obesity at step three of the analysis

in the 2021 decision. (*Id.* at 11 & 21–29). According to Plaintiff, the ALJ's decision offered nothing more than a templated discussion of her obesity at step three and thus was contrary to the Third Circuit's decision in *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 503–04 (3d Cir. 2009). (*Id.* at 24 & 26–27). The Commissioner opposes, asserting that the ALJ properly "considered Plaintiff's obesity at each step of the sequential evaluation process." (Opp. Br. at 13). Specifically, the Commissioner points out that in finding that Plaintiff's obesity "did not medically equal a listing either singly or in combination with her other impairments at step three," the ALJ "explicitly contemplated" Plaintiff's obesity at step three, as required by *Diaz*, and "complied with [Judge Cecchi's] remand [O]rder." (*Id.* at 12–14). For the following reasons, the Court agrees with the Commissioner.

In *Diaz*, the Third Circuit explained that after an ALJ acknowledges obesity as a severe impairment at step two, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 503–04. Meaningful review requires more than a "bare conclusion" or "conclusory statement[.]" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). However, meaningful review does not require an ALJ "to use particular language or adhere to a particular format in conducting [the] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, it requires "sufficient development of the record and explanation of [the ALJ's] findings." *Id.*

Here, it is true that the ALJ's analysis of Plaintiff's obesity at step three is scarce. Notwithstanding, the 2021 decision indicates that the ALJ meaningfully considered Plaintiff's obesity. To start, at step three, the ALJ noted that she evaluated Plaintiff's obesity "pursuant to the extensive and detailed guidelines set forth in [Social Security Ruling ("SSR")] 19-2, including

the references in the listings contained in sections 1.00Q, 3.00I, and 4.00F." (R. at 394). Further, the ALJ noted that she "fully considered obesity in the context of the overall record evidence in making" her step three determination. (*Id.*). In fact, at step four, after citing numerous pieces of medical evidence, the ALJ stated the following:

> With respect to the claimant's obesity, treatment notes between April 29, 2014 and March 5, 2015 indicate a BMI ranging from 40 to 43 [] suggestive of a diagnoses of morbid obesity. While same was not stated by any physician to be disabling, obesity was considered in terms of its possible effects on the claimant's ability to work. In the present case, the claimant's file does not contain evidence indicating that her obesity alone has caused her to be unable to work, nor does it show that in conjunction with her other impairments, it has disabled her, although weight loss has been suggested. As outlined above, the record does not indicate the claimant showed any atrophy, incoordination, imbalance, weakness, tremors, deformities, neurological deficits or impaired ambulation. There is also no suggestion the claimant required hospitalization or emergency care during the period in adjudication. The record generally suggests the claimant remained stable, with no exacerbation of symptoms. Thus, the claimant's obesity is not, by itself, nor in conjunction with her other listed impairments, so severe as to prevent her from working.

(*Id.* at 397 (internal citation omitted); *see also id.* at 398 (stating that treatment notes prior to the date last insured showed Plaintiff had a BMI between 40 and 43 supportive of a diagnosis of obesity)).[3] Nevertheless, after considering obesity in the context of the overall record evidence, the ALJ concluded that from April 1, 2014, the amended alleged disability onset date, through March 31, 2015, the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (*Id.* at 393–94). Against this backdrop, the Court finds

---

[3]      In determining whether the ALJ meaningfully evaluated Plaintiff's obesity at step three of the analysis, the Court can properly look to the ALJ's 2021 decision as a whole, including at other steps. *See Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007) (allowing an ALJ's analysis of relevant medical evidence in one step of a decision to support the ALJ's conclusion in another step).

that, considering the ALJ's decision as a whole, the ALJ properly considered whether Plaintiff's obesity increased the severity or functional limitations of other impairments.  (*Id.* at 394).  In fact, as set forth above, the ALJ specifically considered whether Plaintiff's obesity impacted physical limitations such as "atrophy, incoordination, imbalance, weakness, tremors, deformities, neurological deficits or impaired ambulation."  (*Id.* at 397).  Accordingly, the Court cannot say that the ALJ failed to meaningfully consider the effect of Plaintiff's obesity, individually and in combination with her impairments, at step three.  *See, e.g.*, *Andres F. v. Comm'r of Soc. Sec.*, No. 19-19527, 2022 WL 769972, at *6 (D.N.J. Mar. 14, 2022) (finding that the ALJ's analysis as a whole, including at step four, indicated that the ALJ properly considered plaintiff's obesity including at step three).  And regardless, "an ALJ fulfills [her] obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that [s]he has done so and there is 'no reason not to believe [her].'"  *Granados v. Comm'r of Soc. Sec.*, No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)).  Such is the case here, as the ALJ expressly indicated at step three that she considered Plaintiff's obesity.  (R. at 394).[4]  Given the ALJ's consideration of Plaintiff's obesity in the 2021 decision as a whole, the Court finds no reason to disbelieve the ALJ's indications that she fully considered Plaintiff's obesity in the context of the overall record evidence in making her step three determination.

---

[4]    While Plaintiff argues that the ALJ's decision is contrary to the Third Circuit's decision in *Diaz*, which requires meaningful consideration of the effect of Plaintiff's obesity at step three, the facts in *Diaz* are distinguishable from the instant case.  (Mov. Br. at 24 & 26).  In *Diaz*, the ALJ identified the claimant's obesity as a severe impairment but "failed to consider its impact, in combination with her other impairments, at step three, as required."  *Diaz*, 577 F.3d at 503.  Indeed, the Third Circuit cautioned that while such an omission was an error, it noted that "were there *any* discussion" of the combined effect of Plaintiff's obesity with Plaintiff's other impairments, the outcome may have been different.  *Id.* at 504 (emphasis added).  In this case, obesity is discussed explicitly at step three and elsewhere in the ALJ's 2021 decision, including at step four.  (R. at 394–98).  As such, the ALJ's 2021 decision, read in its entirety, indicates that the ALJ meaningfully reviewed Plaintiff's obesity and is distinguishable from *Diaz*.

Still, even assuming that Plaintiff is correct and the ALJ should have performed a better analysis at step three regarding her obesity, Plaintiff fails to show how the outcome would have been different if the ALJ had done so. Harmless error review is applicable to administrative appeals, and it is Plaintiff, as the party challenging the agency's determination, that bears the burden of showing harmfulness. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). This means that Plaintiff must point to specific evidence and explain "*how* [she] might have prevailed at step three if the ALJ's analysis had been more thorough." *Holloman*, 639 F. App'x at 814 (emphasis in original).

Here, Plaintiff does not identify any substantive, unconsidered medical findings in the record that suggest that Plaintiff's obesity, alone or together with other impairments, was equal in severity to the criteria for any Listing of Impairment ("Listing") that requires a different result at step three. Instead, Plaintiff spends several pages summarizing how under *Diaz* an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step. (Mov. Br. at 22–26). Plaintiff further declares that the ALJ's entire step three analysis is a "prepackaged template" that is not amenable to meaningful consideration.[5] (*Id.* at 26 & 27 n.6).

Such unsupported claims of error are insufficient to disturb the ALJ's step three determination. *Santini v. Comm'r of Soc. Sec.*, 413 F. App'x 517, 520 (3d Cir. 2011) (finding the ALJ's consideration of obesity sufficient where the claimant did not provide evidence "indicating

---

[5]    Plaintiff appears to challenge the ALJ's decision at step three for relying on "a prepackaged template" in her obesity analysis. (Mov. Br. at 27, n.6). This is of no moment. As previously discussed, considering the ALJ's 2021 decision as a whole, the Court can conduct a meaningful review of the ALJ's consideration of Plaintiff's obesity. And regardless, an ALJ is not required "to use particular language . . . in conducting [the] analysis." *Jones*, 364 F.3d at 505. As such, Plaintiff's argument is unavailing.

that her obesity ha[d] a significant effect on her functional capacity"). And in fact, courts in this Circuit have regularly rejected challenges to an ALJ's consideration of a claimant's obesity at step three where the plaintiff fails to demonstrate how further consideration of her obesity would have changed the ALJ's ultimate determination that she was not entitled to benefits. *See, e.g.*, *Ronald G. v. Comm'r of Soc. Sec.*, No. 20-15085, 2024 WL 2978310, at *5 (D.N.J. June 13, 2024) ("As such, even if the [c]ourt were to credit the contention that the ALJ should have explicitly discussed morbid obesity and BMI, [p]laintiff has failed to show how the ALJ's step three determination was erroneous and would have affected the outcome of the ALJ's decision."); *Abigail v. Kijakazi*, No. 21-2275, 2022 WL 16362468, at *10 (D.N.J. Oct. 27, 2022) ("Nonetheless, even assuming that [p]laintiff is correct that the ALJ's analysis was deficient at steps three . . . [p]laintiff fails to demonstrate how further consideration of her obesity would have changed the ALJ's ultimate determination that she was not entitled to benefits."); *Andres F.*, 2022 WL 769972, at *6 ("[E]ven assuming that [p]laintiff is correct and that the ALJ should have performed a better analysis at steps three . . . regarding his obesity, [p]laintiff fails to show how the outcome would have been different if the ALJ had done so."); *Soto v. Kijakazi*, No. 21-2816, 2022 WL 4976341, at *9 (D.N.J. Oct. 4, 2022); *Nova v. Comm'r of Soc. Sec.*, No. 19-18145, 2021 WL 1712262, at *4 (D.N.J. Apr. 30, 2021). For these reasons, Plaintiff's step three contentions are rejected.

### B.    Step Four

#### i.    Obesity

*Second*, Plaintiff argues that the ALJ failed to sufficiently explain how Plaintiff's obesity affected her RFC. (Mov. Br. at 11 & 21–29). Specifically, Plaintiff contends that the ALJ's decision offered nothing more than conclusory announcements about her obesity at step four and thus was contrary to the Third Circuit's decision in *Diaz*. (*Id.* at 26). Plaintiff argues that, in

considering how her obesity affected her RFC, the ALJ only offered a "collection of irrelevancies" from the medical record. (*Id.* at 27–28). Furthermore, Plaintiff argues that it was both "legally important" and "a matter of 'common sense' that obesity would naturally affect musculoskeletal/orthopedic conditions," yet contends that the ALJ's analysis contained no discussion of how Plaintiff's obesity impacted her musculoskeletal or orthopedic conditions. (*Id.* at 26). The Commissioner opposes, again asserting that the ALJ "considered Plaintiff's obesity at each step of the sequential evaluation process," as required by *Diaz*, and in compliance with Judge Cecchi's remand Order. (Opp. Br. at 12–14). The Court agrees with the Commissioner.

As discussed above, in *Diaz*, the Third Circuit explained that after an ALJ acknowledges obesity as a severe impairment at step two, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at . . . every subsequent step." *Diaz*, 577 F.3d at 503–04. However, when an ALJ "explicitly contemplate[s] . . . obesity at the appropriate step (i.e., when assessing [a plaintiff's] RFC)," the ALJ meets the burden imposed by *Diaz*. *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015).

As already discussed, the ALJ's decision as a whole indicates that the ALJ meaningfully considered Plaintiff's obesity. Specifically, as recounted above, when discussing Plaintiff's obesity at step four, the ALJ provided the following:

> With respect to the claimant's obesity, treatment notes between April 29, 2014 and March 5, 2015 indicate a BMI ranging from 40 to 43 [ ] suggestive of a diagnoses of morbid obesity. While same was not stated by any physician to be disabling, obesity was considered in terms of its possible effects on the claimant's ability to work. In the present case, the claimant's file does not contain evidence indicating that her obesity alone has caused her to be unable to work, nor does it show that in conjunction with her other impairments, it has disabled her, although weight loss has been suggested. As outlined above, the record does not indicate the

16

> claimant showed any atrophy, incoordination, imbalance, weakness, tremors, deformities, neurological deficits or impaired ambulation. There is also no suggestion the claimant required hospitalization or emergency care during the period in adjudication. The record generally suggests the claimant remained stable, with no exacerbation of symptoms. Thus, the claimant's obesity is not, by itself, nor in conjunction with her other listed impairments, so severe as to prevent her from working.

(R. at 397 (internal citation omitted)). To be sure, Plaintiff correctly points out that some of the ALJ's language in this discussion suggests that she considered whether Plaintiff's obesity prevented her from working entirely, which is not the relevant inquiry at step four. (Mov. Br. at 28–29). The relevant inquiry is whether Plaintiff's obesity, either alone or in combination with her other impairments, causes any work-related limitations that should be considered in developing Plaintiff's RFC. *Andres F.*, 2022 WL 769972, at *6. Nevertheless, the ALJ's analysis as a whole indicates that the ALJ properly considered evidence regarding whether Plaintiff's obesity causes any limitations. She specifically considered obesity in conjunction with physical limitations such as "atrophy, incoordination, imbalance, weakness, tremors, deformities, neurological deficits or impaired ambulation." (R. at 397). Accordingly, the ALJ's discussion of Plaintiff's obesity at step four indicates that the ALJ meaningfully considered Plaintiff's obesity.

Further, though Plaintiff contends that the ALJ's decision offered nothing more than conclusory announcements regarding her obesity at step four and thus was contrary to the Third Circuit's decision in *Diaz*, the Court finds that the Third Circuit's decision in *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015) is more analogous to the facts of this case than *Diaz*. (Opp. Br. at 14). In *Hoyman*, the claimant, relying on *Diaz*, argued that the ALJ failed to properly consider her obesity. *Hoyman*, 606 F. App'x at 680. The Court distinguished *Diaz* stating that, in *Diaz*, "the ALJ mentioned the claimant's obesity at an earlier step, but then did not consider it at a subsequent step. That is not what occurred [in *Hoyman*]. [In *Hoyman*], the ALJ explicitly

contemplated Hoyman's obesity at the appropriate step (i.e., when assessing Hoyman's RFC)." *Id.* (internal citation omitted).  Accordingly, Third Circuit found Hoyman's argument failed.  Like *Hoyman*, the ALJ in this case found Plaintiff's obesity severe at step two and then explicitly contemplated it in subsequent steps, including at step four.  By explicitly contemplating obesity when assessing Plaintiff's RFC, the ALJ sufficiently met the Third Circuit's expectation for meaningful consideration of obesity at step four.  *See id.*[5]

Nevertheless, even assuming that Plaintiff is correct and that the ALJ should have relied on more obesity-related evidence in her RFC decision, Plaintiff fails to show how the outcome would have been different if the ALJ had done so and that she was thereby harmed.  As previously discussed, where a plaintiff alleges error by the ALJ, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki*, 556 U.S. at 409.  It is the plaintiff's burden to establish not just that "obesity *can* impair [her] ability to perform basic work activities," but to specify "*how* her obesity . . . affect[s] her ability to perform basic work activities."  *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020).  A "generalized response" that a plaintiff's weight would necessarily limit her functional abilities without explaining *how* obesity would affect the ALJ's analysis is not sufficient to meet this burden.  *Rutherford*, 399 F.3d at 553.  A "generalized response" is particularly insufficient when the ALJ relied on medical evidence from physicians who were aware of the plaintiff's obesity.  *Id.*

---

[5]     Plaintiff argues that the ALJ failed to sufficiently explain how Plaintiff's obesity affected her RFC because the evidence the ALJ relied on in discussing her obesity at step four amounted to a "collection of irrelevancies" that failed to explain why Plaintiff was able to do light work despite her obesity.  (Mov. Br. at 27–28).  The Court is not persuaded.  At best, Plaintiff expresses disagreement with the ALJ's assessment of evidence considered in this section and her resulting RFC assessment.  However, disagreement alone is not a basis to disturb an ALJ's decision.  *See e.g.*, *Perkins*, 79 F. App'x at 514–15 ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 687 (3d Cir. 2020) ("[W]hile Sisco may disagree with the ALJ's factual findings, they are supported by substantial evidence and so must be upheld under the applicable standard of review.").

Here, Plaintiff fails to point to any evidence from the record to demonstrate how her obesity impacted her work-related functions, such that she would be unable to meet the exertional demands of light work. To be sure, she asserts that obesity would necessarily limit her functional abilities, claiming that, as "a matter of 'common sense,'" "obesity would naturally affect musculoskeletal/orthopedic conditions." (Mov. Br. at 26). This argument does not alter the Court's conclusion. The Third Circuit's decision in *Rutherford* is instructive on this point. 399 F.3d at 546–58. In *Rutherford*, the Third Circuit held the following:

> Rutherford never mentioned obesity as a condition that contributed to her inability to work . . . . [E]ven if we assume—in accordance with common sense—that . . . obesity could be a factor, Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments. Because her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition.

*Id.* at 553. Similarly, Plaintiff here fails to explain *how* obesity would affect the ALJ's analysis or cite to any evidence from the record to demonstrate how her obesity impacted her work-related functions, such that she would be unable to meet the exertional demands of light work.[6] Her

---

[6]    Plaintiff specifically argues that the ALJ could not have reached the RFC of "light work" again with the addition of obesity as a severe impairment. (Mov. Br. at 29 n.7). Plaintiff questions how "morbid obesity, underrecognized and unacknowledged on the same evidence last time, now produces the same RFC after it is acknowledged" and suggests that finding the same RFC with the addition of a severe impairment "just isn't possible unless the ALJ intentionally frustrated the prior [District Court remand] Order in order to avoid" having to award her benefits. (*Id.*). The Court finds this argument unpersuasive. As the Commissioner correctly points out, an "ALJ is not prohibited from reaching the same RFC in a later decision despite the addition of a severe impairment at step two." (Opp. Br. at 17). In fact, there have been "several situations where the Appeals Council rule[d] that the ALJ must make further findings and the ALJ reache[d] the same conclusion after remand. These instances have been upheld on appeal to the federal judiciary." *Centeno v. Comm'r of Soc. Sec.*, No. 13-2951, 2015 WL 5666751, at *6 (D.N.J. Sept. 25, 2015) (citing *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009) (affirming district court judgment in favor of the Commissioner where the ALJ found plaintiff had the same RFC on remand from the Appeals Council as he did after his initial hearing and thus did not call a vocational expert to testify during the second hearing); *Abell–*

generalized arguments that the ALJ's evaluation of her obesity at step four was insufficient, therefore, does not provide this Court with a basis to disturb the ALJ's decision, particularly since the ALJ relied on substantial medical evidence from physicians who would have been aware of her weight. *See id.*; (R at 394–98; *id.* at 397 ("In the present case, the claimant's file does not contain evidence indicating that her obesity alone has caused her to be unable to work, nor does it show that in conjunction with her other impairments, it has disabled her, although weight loss has been suggested.")). Given that the ALJ meaningfully considered and relied on medical evidence regarding the impact of Plaintiff's obesity on her ability to perform work, the Commissioner's evaluation of her obesity at step four is based on substantial evidence and must be affirmed.

### ii.       Dr. Paolino's Evaluation

*Third*, Plaintiff challenges the ALJ's decision to adjust the weight given to Dr. Paolino's evaluation and Dr. Pirone's affirmation of that evaluation. (Mov. Br. at 11 & 19–21). As set forth above, in remanding this case for further proceedings, Judge Cecchi noted that the ALJ had assigned partial weight to Dr. Paolino's opinion that Plaintiff was capable of only three hours of standing and walking in an eight-hour workday, which is well below the requirements of light work—the type of work the ALJ concluded Plaintiff could perform. (Order at 2). Yet, the ALJ inconsistently found Plaintiff *more* limited than Dr. Paolino opined, rendering the basis for the light work RFC unclear. (*Id.*). Judge Cecchi concluded that remand was appropriate because the ALJ did not explain this apparent discrepancy between her determination that Plaintiff could perform light work during the relevant period yet was also "more limited" than Dr. Paolino

---

*Fleener v. Colvin*, No. 14-1117, 2015 WL 2417926, at *2–3 (S.D. Ind. May 20, 2015) (ruling that it was not inappropriate for the ALJ to use the same RFC determined after initial hearing upon remand from the Appeals Council for further consideration of plaintiff's mental conditions); *Brady v. Comm'r of Soc. Sec.*, No. 17-0017, 2008 WL 4181376, at *24–25 (N.D.W.V. Sept. 5, 2008) (ruling in favor of the Commissioner the court noted "[t]he fact that the ALJ relied on similar evidence and analyses in both decisions does not render his post-remand decision non-compliant with the Appeals Council's order")).

determined. (*Id.* at 3). Plaintiff now argues that the ALJ responded to the discrepancy Judge Cecchi highlighted in her remand Order by improperly "withdraw[ing] the previous evidentiary calculus," adjusting the weight given to Dr. Paolino's evaluation from "'partial weight' and replacing it with a new calculus of 'no weight.'" (Mov. Br. at 19). According to Plaintiff, the ALJ adjusted the weight of this evidence to "suit a goal directed outcome," which was to find the same RFC of light weight that had been rendered in the prior 2018 decision and deny disability insurance benefits. (*Id.* at 11 & 21). The Commissioner opposes, stating that the ALJ "cured [the] deficiency in her most recent [2021] decision" by "clearly articulat[ing] why she concluded that Dr. Paolino's findings deserved no weight." (Opp. Br. at 10–11). For the following reasons, the Court agrees with the Commissioner.

An "ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). When "medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." *Id.* at 705. However, the "ALJ cannot reject evidence for no reason or for the wrong reason." *Id.* at 706. Moreover, "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer*, 186 F.3d at 429. Without such a reason listed, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Finally, in weighing evidence, an ALJ should give "greater weight . . . to the findings of a treating physician than to a physician who has examined the claimant as a consultant." *Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994).

In the 2021 decision, the ALJ clearly articulated why Dr. Paolino's findings deserved no weight. (R. at 398). The ALJ considered the findings of Dr. James Paolino, which were made in May 2016, and the affirmation of these findings by Dr. Pirone in June 2016. (*Id.* at 15 & 398).

21

By way of brief background, at the initial level of administrative review, Dr. Paolino found Plaintiff was *currently* limited to light work with standing and/or walking for a total of three hours for purposes of Plaintiff's SSI application under Title XVI of the Social Security Act. (*Id.* at 65 & 73). However, he concluded that there was insufficient evidence prior to the date last insured—March 31, 2015—to make a determination on Plaintiff's DIB claim under Title II of the Social Security Act. (*Id.* at 63 & 66). And Dr. Pirone affirmed Dr. Paolino's conclusion of insufficient evidence of a severe impairment prior to Plaintiff's date last insured for purposes of Plaintiff's DIB claim under Title II. (*Id.* at 83).

In the 2018 decision, which solely addressed Plaintiff's DIB claim under Title II, the ALJ discussed the findings made by Dr. Paolino and Dr. Pirone and collectively assigned them "partial weight" because "evidence received at the hearing level show[ed] that the claimant [was] somewhat more limited than [they] determined. (*Id.* at 15). Further, although they had an opportunity to review Plaintiff's medical record, the ALJ noted that "their opinions were made post the date last insured and thus remote." (*Id.*). As set forth above, in remanding this case for further proceedings, Judge Cecchi noted that the ALJ had assigned partial weight to Dr. Paolino's opinion that Plaintiff was capable of only three hours of standing and/or walking in an eight-hour workday, which is well below the requirements of light work—the type of work the ALJ concluded Plaintiff could perform. (Order at 2). Yet, the ALJ inconsistently found Plaintiff *more* limited than Dr. Paolino opined, rendering the basis for the light work RFC unclear. (*Id.*). In light of this inconsistency, Judge Cecchi concluded that remand was appropriate. (*Id.* at 3).

The ALJ cured this deficiency in the 2021 decision, which clarified that she considered the findings made by Dr. Paolino and Dr. Pirone from two separate time periods. (R. at 398). The state agency consultant findings included evidence "prior to the date last insured" and from the

"period after the date last insured." (*Id.*). Prior to the date last insured, Dr. Paolino and Dr. Pirone found "insufficient evidence prior to the date last insured to make a determination on [Plaintiff's] Title II claim," the DIB claim at issue here. (*Id.*). After the date last insured, Dr. Paolino found that Plaintiff was able to "work at the light level of exertion, with a limitation to 3 hours of standing/walking, occasional climbing of ladders/ropes/scaffolds, kneeling and crawling and frequent climbing of ramps/stairs and crouching." (*Id.*). The ALJ considered this evidence and offered reasons for discounting the findings prior to the date last insured and after the date last insured in her 2021 decision. (*Id.*). Regarding Dr. Paolino and Dr. Pirone's findings prior to the date last insured, the ALJ noted that they determined that there was insufficient evidence prior to Plaintiff's date last insured to make a determination on the Title II claim, the DIB claim at issue here. (*Id.*). The ALJ assigned these findings "no weight." (*Id.*). Instead, the ALJ found in Plaintiff's favor, stating:

> evidence supports a finding of severe impairments of spine disorders/degenerative disc disease and obesity prior to the date last insured, as MRI's of the cervical and lumbar spine (prior to the date last insured) showed spondylotic changes, thecal sac indentation, disc herniations, nerve root indentation, fact hypertrophy, disc bulging, hypertrophic facet joint disease, spinal stenosis and degenerative disc disease, and as treatment notes (prior to the date last insured) showed the claimant had a BMI between 40 and 43 supportive of a diagnosis of obesity. However, as discussed above, such impairments are not totally disabling but rather limited the claimant to a light residual functional capacity.

(*Id.*). Regarding the findings after the date last insured, the ALJ observed that those findings also deserved no weight because they related to the period after Plaintiff's date last insured and, therefore, did not relate to Plaintiff's functioning during the period under adjudication. (*Id.*). Indeed, in the "Findings of Fact and Analysis of Evidence" section from Dr. Paolino's disability evaluation, he considered medical evidence beyond the date last insured in reaching his RFC-

related conclusions, including evidence of Plaintiff's left knee meniscal tear from November 2015. (*Id.* at 63). In her 2021 decision, the ALJ clarified that this impairment was non-medically determinable for purposes of Plaintiff's DIB application given that there was insufficient evidence to suggest this impairment was present prior to March 31, 2015, the date last insured. (*Id.* at 393 & 397). Moreover, the ALJ noted that, at the hearing on June 22, 2021, Plaintiff's counsel "acknowledged that the residual functional capacity outlined by the DDS state agency consultants addressed the time period after the date last insured." (*Id.* at 398). For this reason, the ALJ concluded that state agency consultants' findings regarding the period after the date last insured were "insufficient to assess the claimant's level of functioning as of the date last insured." (*Id.*).

Against this backdrop, the ALJ clearly articulated why she concluded that Dr. Paolino's findings, affirmed by Dr. Pirone, deserved no weight. Specifically, on the one hand, the ALJ noted that findings relating to the period before the date last insured deserved no weight because they did not credit the evidence reflecting severe impairments prior to the date last insured. (*Id.*). On the other hand, the ALJ pointed out that the findings relating to the period *after* Plaintiff's date last insured did not reflect Plaintiff's functioning during the relevant period. (*Id.*). Accordingly, because the ALJ complied with Judge Cecchi's remand order and remedied the discrepancy between the RFC and the weight she assigned to the state agency consultants' findings, the Court finds that the ALJ's decision on this front is supported by substantial evidence. Because the ALJ is only required to evaluate the evidence pertaining to the relevant period, the Court finds that in readjusting the weight of the state agency consultants' findings to "no weight," the ALJ rejected the evidence for a proper reason. *See Cotter*, 642 F.2d at 706 (holding that an "ALJ cannot reject evidence for no reason or the wrong reason").

Plaintiff's remaining arguments to the contrary are unavailing. In her moving brief, Plaintiff seems to assert that it was improper for the ALJ to withdraw the previous evidentiary calculus, adjusting the weight given to Dr. Paolino's evaluation from "'partial weight' and replacing it with a new calculus of 'no weight.'" (Mov. Br. at 19). The Court is not convinced. Plaintiff cites to no authority to support the proposition that an ALJ is prohibited from altering the weight given to medical evidence on remand. Rather, the ALJ is only tasked with considering all the evidence and giving some reason for discounting the evidence she rejects, which she did in the 2021 decision. *See Plummer*, 186 F.3d at 429.

Next, Plaintiff challenges the ALJ's assertion that her counsel previously acknowledged that the DDS state agency consultants' findings reflected the period after the date last insured. (Mov. Br. at 20 n.4). She argues that the DDS consultants only rendered their RFC evaluation after the date last insured because she didn't make an application for disability until March 8, 2016. (*Id.*). For this reason, Plaintiff states that the ALJ should not "discount the DDS RFC simply because it was dated in 2016 because the evidence upon which it was based covered the period before expiration of insurance status in 2015." (*Id.*). Plaintiff's argument is unconvincing. As the Commissioner points out, Dr. Paolino found that Plaintiff was "*currently* limited to light work with standing and/or walking for a total of three hours" but he concluded there was insufficient evidence prior to Plaintiff's date last insured to make a determination on the Title II DIB claim. (Opp. Br. at 9–11); (*see also* R. at 65–66 & 82–86). And Dr. Pirone affirmed Dr. Paolino's conclusion of insufficient evidence of a severe impairment prior to Plaintiff's date last insured for purposes of Plaintiff's DIB claim under Title II. (R. at 83). As such, the Court finds that the ALJ's decision to assign no weight to the state agency consultants' findings rendered past Plaintiff's date last insured, is supported by substantial evidence.

Regardless, even if the state agency consultants' findings were relevant and based only on the medical record from the relevant period, as Plaintiff asserts, Plaintiff fails to show how the ALJ's RFC calculation would have been different had the ALJ given those findings any weight. As previously discussed, where a plaintiff alleges error by the ALJ, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409. Here, it appears that Plaintiff argues in favor of the DDS state agency consultants' RFC conclusion because she disagrees with that made by the ALJ. However, it is not the role of this Court to re-weigh the medical evidence to determine whether the ALJ or the DDS state agency consultants were correct. While Plaintiff asserts that the RFC determination was incorrectly made, here, as will be described further below, the ALJ carefully considered all relevant evidence to arrive at her RFC determination of light work, including Plaintiff's testimony, medical professional testimony, and medical tests and reports and ultimately found that Plaintiff's description regarding "the intensity, persistence[,] and limiting effects" of her conditions were not "entirely consistent" with the medical evidence in the record. (R. at 395). And in fact, in rendering her RFC determination, the ALJ highlighted that multiple medical records of Plaintiff's physical examinations from April 2014 through March 2015 were "generally unremarkable" and "not supported by any clinical findings suggesting restrictions" and also considered multiple treatment notes pertaining to Plaintiff's motor strength, sensation, and neurological abilities during the relevant period, all of which were noted to be normal. (*Id.* at 396–97). RFC-related conclusions made by an ALJ must be reviewed "with the deference required of the substantial evidence standard of review." *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002). As such, Plaintiff's disagreement alone is not sufficient to disturb an ALJ's decision. *See Perkins*, 79 F. App'x at 514–

15 ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

### iii.    RFC of Light Work

*Fourth*, Plaintiff argues that the ALJ failed to issue an RFC assessment with a narrative discussion describing how the evidence supports each conclusion, as required on remand. (Mov. Br. at 11 & 18–19). Specifically, instead of describing how the medical "evidence supports each conclusion, or any element of the light work RFC," Plaintiff contends that the ALJ "merely repeats the RFC for light work." (*Id.* at 19). For this reason, Plaintiff argues that the ALJ failed to explain why she retained the ability to perform light work. (*Id.* at 28–29). The Commissioner opposes, asserting that the ALJ reviewed the evidence, as required, and assessed an RFC based on that evidence, as also required given the ALJ's fact-finding duties. (Opp. Br. at 16). For the following reasons, the Court agrees with the Commissioner.

The RFC constitutes "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p; *see also* 20 C.F.R. § 404.1545(a). The work-related functions that must be addressed in an RFC assessment include the physical functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, and each function "must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours,') even if the final RFC assessment will combine activities." S.S.R. 96-8p. Furthermore, an "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." *Harris v. Comm'r of Soc. Sec.*, No. 09-3219, 2010 WL 2874352, at *6 (D.N.J. July 19, 2010) (citations omitted). Despite these requirements, "an ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis." *Lorie H. v. Comm'r of Soc. Sec.*, No. 20-13192, 2022 WL 2803168,

27

at *6 (D.N.J. July 18, 2022) (citing *Ungemach v. Comm'r of Soc. Sec.*, No. 18-4987, 2019 WL 3024858, at *4 (D.N.J. July 11, 2019)). Rather, the ALJ must merely "'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Hernandez-Flores v. Comm'r of Soc. Sec.*, No. 13-4738, 2015 WL 4064669, at *6 (D.N.J. July 1, 2015) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (Table), 00–1995, slip op. at 4– 5 (3d Cir. Dec. 19, 2000)).

The ALJ's RFC determination in this instance plainly satisfies this standard. Indeed, in assessing Plaintiff's RFC, the ALJ considered extensive evidence "based on the objective medical evidence and the claimant's testimony." (R. at 398). This included a discussion of Plaintiff's medical history, her self-reported limitations and abilities, her hearing testimony, the medical opinions of the consultative examiners and medical consultants, as well as the other record evidence. (*Id.* at 392–98). The ALJ began her RFC analysis by summarizing testimony given by Plaintiff during the initial hearing on March 28, 2018,[9] including her history of pain, medications taken, daily activities, and her ability to sustain elements of work including sitting, standing, lifting, and carrying. (*Id.* at 395). The ALJ noted that Plaintiff last worked as a machine operator in 2010 but stopped due to bad pain in her lower back and in her neck, such that she "could not bend her neck at all." (*Id.*). In addition, the ALJ recounted Plaintiff's testimony that her "pain was sharp," that it "went down through the left shoulder and arm," that she experienced "pain in the neck with looking/bending the neck forward," and that "lower back pain," which "radiated into the left leg down to the knee," "prevented her from sitting or standing too long." (*Id.*). While she was treated with medications and injections, the ALJ explained that "the injections did not work"

---

[9]    No additional testimony was taken from Plaintiff at the subsequent hearing on June 22, 2021. (R. at 395).

and Plaintiff did not have insurance for a while, so she used home remedies such as pillows and elevating her legs to relieve pain. (*Id.*). The ALJ further noted that Plaintiff did not have back or neck surgery but did take "medication for swelling as well as muscle relaxers at night." (*Id.*).

The ALJ then noted Plaintiff's testimony pertaining to activities of daily living. (*Id.*). This included Plaintiff's "ability to lift a few pounds but not steadily, as it caused the pain in the back and neck to get sharper," her inability "to perform repeated lifting," her ability to "stand for about 15 minutes" but "need[] to sit" due to back and neck pain,  and her ability to "sit for about 1 hour but need[] to elevate her legs to alleviate the pain," her ability to "reach overhead" but "not do it constantly" because it caused neck and left shoulder pain, and her ability to "drive short distances, locally." (*Id.*). The ALJ further considered that Plaintiff helped her husband with cooking but had "difficulty with cooking due to the movement required." (*Id.*). Additionally, the ALJ noted that Plaintiff "only sle[pt] 2 hours at a time" due to being "uncomfortable." (*Id.*).

After carefully reviewing the evidence, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." (*Id.*). However, the ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). To support this conclusion, the ALJ discussed multiple medical reports regarding Plaintiff's severe spine disorder and degenerative disc disease between April 1, 2014, and March 31, 2015. (*Id.* at 394 & 396). For example, at step three, the ALJ indicated the following:

> [T]he record does not show the claimant had a documented need for a walker, bilateral canes or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or an inability to use one extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements and a documented medical need for a one-handed, hand-

29

> held assistive device that requires the use of the other upper
> extremity or a wheeled and seated mobility device involving the use
> of one hand; or an inability to use both upper extremities to the
> extent that neither can be used to independently initiate, sustain, and
> complete work-related activities involving fine and gross
> movements.  During the period in adjudication, the record does not
> show the claimant required an assistive for ambulation.  There is no
> suggestion of any incoordination or imbalance.

(*Id.* at 394).  Further, at step four, the ALJ highlighted specific treatment notes and an MRI.  (*Id.* at 396).  Specifically, on April 21, 2014, treatment notes indicated "reports of dizziness, right hand numbness and left foot pain," and on April 29, 2014, treatment notes indicated "reports of continued neck and low back pain."  (*Id.*).  Further, the ALJ pointed out that on April 30, 2014, Plaintiff had an MRI of the cervical and lumbar spine. (*Id.*).  While the MRI imaging "showed significant findings," the ALJ highlighted that medical records of Plaintiff's physical examinations from April 2014 through March 2015 were "generally unremarkable" and "not supported by any clinical findings suggesting restrictions." (*Id.* at 396–97).  The ALJ proceeded to consider multiple treatment notes pertaining to Plaintiff's motor strength, sensation, and neurological abilities during the relevant period, all of which were noted to be normal.  (*Id.* at 396).  To start, on September 26, 2014, the ALJ observed that treatment notes included "reports of right leg pain for two months as well as back pain."  (*Id.*).  However, Plaintiff was "noted to have normal motor strength and sensation" and was "managed with medication."  (*Id.*).  On November 25, 2014, the ALJ noted that Plaintiff's treatment notes lacked "any complaints of back or neck pain" and that "[e]xamination indicated normal sensation." (*Id.*).  In fact, Plaintiff's right foot x-ray taken at this time was "within normal limits."  (*Id.*).  On January 26, 2015, the ALJ observed that Plaintiff reported "fatigue and tiredness" but was "noted to have no neurological deficits." (*Id.*).  Finally, on March 5, 2015, the ALJ noted that Plaintiff's neurological functioning was "intact" with "normal motor strength and normal sensation." (*Id.*).  In reviewing these findings overall, the ALJ

noted that "MRI findings alone are dispositive of a level of functioning." (*Id.* at 397). The ALJ stated that the "minimal clinical findings in the record" were "normal," "with intact neurological functioning," and there was no suggestion Plaintiff "had any difficulty with ambulation or showed any atrophy, incoordination, imbalance, tremors or deformities." (*Id.*).

In addition, the ALJ also considered medical evidence from a consultative examination on April 25, 2016, with Betty Vekhnis, M.D. (*Id.* at 396). While the ALJ noted that Dr. Vekhnis's findings did not address Plaintiff's level of functioning during the period in adjudication, they showed that Plaintiff met many elements of the light work designation more than one year after March 31, 2015, the date last insured. (*Id.*). In particular, Plaintiff "walk[ed] without an assistive device, had full range of motion in the upper and lower extremities, had intact strength throughout, had no focal weakness and had normal functioning of the hands for fine and gross motor manipulations with intact strength" over a year after her date last insured. (*Id.*). Plaintiff's "Spurling and Straight Leg Raising tests were also negative." (*Id.*).

As for Plaintiff's obesity, the ALJ considered treatment notes between April 29, 2014, and March 5, 2015, which indicated Plaintiff's BMI ranged from "40 to 43 . . . suggestive of a diagnosis of morbid obesity." (*Id.* at 397). Nevertheless, the ALJ found no evidence in the record to indicate that "obesity alone has caused her to be unable to work, nor d[id] it show that in conjunction with her other impairments, it ha[d] disabled her, although weight loss ha[d] been suggested." (*Id.*). The ALJ recalled her previous finding that the record did not indicate "atrophy, incoordination, imbalance, weakness, tremors, deformities, neurological deficits or impaired ambulation" and noted that there was "no suggestion the claimant required hospitalization or emergency care during the period in adjudication." (*Id.*). Finally, the ALJ stated that the record suggested that "claimant remained stable, with no exacerbation of symptoms." (*Id.*). For these reasons, the ALJ found that

"obesity [wa]s not, by itself, nor in conjunction with [Plaintiff's] other listed impairments, so severe as to prevent her from working." (*Id.*).

After considering the aforementioned evidence, the ALJ concluded that "evidence fails to support the claimant's assertions of total disability." (*Id.*). Despite Plaintiff's severe impairments, she "retain[ed] the capacity to function adequately to perform many basic activities associated with work." (*Id.*). For this reason, the ALJ found Plaintiff retained the RFC to "perform the exertional demands of light work." This included:

> lifting and carrying objects weighing up to twenty pounds;
> frequently lifting and carrying objects weighing up to ten pounds;
> standing and/or walking up to six hours in an eight-hour workday;
> and sitting up to six hours in an eight-hour workday (20 CFR
> 404.1567 and 416.967), along with the additional limitations
> outlined above in the residual functional capacity.

(*Id.*).[10] Against this backdrop, the ALJ plainly reviewed all of the relevant evidence, and provided a clear explanation of the bases for her determination that Plaintiff retained the RFC to perform light work, with certain exceptions. *Jones*, 364 F.3d at 505.

Plaintiff contends that the ALJ failed to provide a narrative discussion for her RFC assessment of light work, describing how the evidence supports each conclusion. (Mov. Br. at 11 & 18–19). Plaintiff generally argues that the ALJ failed to explain why she retained the ability to perform light work, as the ALJ did not specify how she retained the capacity to meet the functional requirements of light work including sitting, standing, walking, lifting, and carrying. (*Id.* at 28–29). Plaintiff's arguments are unavailing. Social Security Ruling 96–8p states that the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his

---

[10]     The ALJ later considered the findings of DDS state agency consultant Dr. Paolino, affirmed by DDS state agency consultant Dr. Pirone, concerning both the evidence "prior to the date last insured" and the "period after the date last insured." (*Id.* at 398). As previously reviewed, both of these findings were given "no weight" in the RFC analysis. (*Id.*).

or her work-related abilities on a function-by-function basis." S.S.R. 96–8p. The functions that must be addressed include the physical functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, and each function "must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours,') even if the final RFC assessment will combine activities." *Id.* Only after the function-by-function analysis "may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*

Nevertheless, as already stated, the ALJ is neither required to summarize her RFC findings using any particular language, nor must the narrative discussion adhere to any particular format. *See Lorie H.*, 2022 WL 2803168, at *6 (citing *Jones*, 364 F.3d at 505). Though S.S.R. 96-8p requires that functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling, "must be considered," in the RFC calculation, it does not require every function to be specifically delineated in the RFC. Indeed, S.S.R. 96-8p contemplates that in her "final RFC assessment," an ALJ may assess the functions in combination rather than individually. S.S.R. 96-8p. Although the ALJ did not explicitly opine on each element of the "light work" exertional level, that does not mean the ALJ did not "consider" those functions. In fact, as detailed below, the ALJ's detailed RFC analysis clearly referenced tasks relevant to the "light work" analysis.

The regulations define "light work" as the following:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Additionally, S.S.R. 83-10 provides that "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." S.S.R. 83-10. Here, with respect to Plaintiff's ability to walk or stand, the ALJ considered multiple medical evaluations, which indicated that Plaintiff had normal functional strength and range of motion, ambulated with a symmetric gait and stance, did not exhibit neurological deficits that might impact walking or standing, and did not require an assistive device when walking. (*See, e.g.*, R. at 394 ("[T]he record does not show the claimant had a documented need for a walker, bilateral canes or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands . . . ."); *id.* at 396 ("Medical records from April 2014 to March 2015 generally showed that the claimant physical examination was generally unremarkable."); *id.* ("Treatment notes on September 26, 2014 indicate[d] . . . normal motor strength and sensation."); *id.* ("Treatment notes on November 25, 2014 d[id] not indicate any complaints of back or neck pain. Examination indicated normal sensation. It was indicated a right foot x-ray was within normal limits."); *id.* ("Treatment notes on January 26, 2015 indicate[d] . . . no neurological deficits."); *id.* ("Treatment notes in March 5, 2015 indicate[d] the claimant maintained intact neurological functioning, with normal motor strength and normal sensation.")). And while the ALJ noted that "MRI imaging of the cervical and lumbar spine showed significant findings," they were "not supported by any clinical findings suggesting restrictions." (*Id.* at 397). Further, there was no medical evidence to suggest that Plaintiff "had any difficulty with ambulation or showed any atrophy, incoordination, imbalance, tremors or deformities." (*Id.*).

Likewise, with respect to Plaintiff's ability to lift and carry, the ALJ considered several medical evaluations, which indicated that Plaintiff did not have difficulty with these tasks. (*See,*

*e.g.*, *id.* at 394 ("[T]he record does not show . . . an inability to use one extremity to independently

initiate, sustain, and complete work-related activities involving fine and gross movements and a

documented medical need for a one-handed, hand-held assistive device that requires the use of the

other upper extremity or a wheeled and seated mobility device involving the use of one hand . . .

."); *id.* ("[T]he record does not show . . . an inability to use both upper extremities to the extent

that neither can be used to independently initiate, sustain, and complete work-related activities

involving fine and gross movements."); *id.* at 396 ("Treatment notes on September 26, 2014

indicate[d] . . . normal motor strength and sensation."); *id.* ("Treatment notes in March 5, 2015

indicate the claimant maintained intact neurological functioning, with normal motor strength and

normal sensation.")).[11]

        After considering the aforementioned evidence, the ALJ concluded that Plaintiff had the

RFC to perform light work and could frequently climb ramps and stairs, balance, kneel, stoop, and

---

[11]        While Plaintiff contends that the ALJ discounted other medical evidence of record in reaching her RFC
determination, the Court finds that the evidence Plaintiff relies on does not demonstrate that the ALJ would have
reached a different RFC determination prior to the date last insured. Specifically, Plaintiff argues in a footnote that
the ALJ dismissed impairments that were "medically probable" to have been "present seven months before at
expiration of insured status." (Mov. Br. at 30 n.8). Plaintiff highlights two medical findings pertaining to her knee
condition that she contends were inappropriately dismissed by the ALJ: (i) "On November 27, 2015[, an] MRI of
plaintiff's left knee revealed a torn meniscus in two places along with joint effusion" and (ii) "A month earlier, x-rays
revealed joint effusion and some degenerative changes." (*Id.*). Plaintiff argues that the ALJ refused to entertain the
possibility that these impairments were present prior to her date last insured, and neglected to "call for medical expert
testimony." (*Id.*). Instead, the ALJ dismissed these impairments "without discussion as 'not relevant.'" (*Id.*). The
Court does not find this argument persuasive. The ALJ explicitly considered evidence in Plaintiff's medical record
regarding her left knee meniscus tears. (R. at 393 & 396–97). In fact, the ALJ found that treatment notes indicated
"pain in the knee." (*Id.* at 396). However, these notes were from "December 2015," after Plaintiff's date last insured,
and there were "no clinical findings" prior to the date last insured. (*Id.*). The ALJ further explained that Plaintiff
reported that "her left knee pain did not begin until early October 2015/late September 2015—after the date last
insured." (*Id.* at 396–97). Additionally, the two medical findings that Plaintiff highlighted, including the "X-rays
of the left knee" and the "MRI of the left knee" occurred "approximately seven to eight months past the date last insured,"
on October 28, 2015, and November 27, 2015, respectively. (*Id.* at 397). Plaintiff's argument regarding how the knee
pain may have impacted her RFC is purely speculative and not based on evidence in the record prior to her date last
insured. For these reasons, the ALJ properly concluded that Plaintiff's "left knee pain was not present prior to the
date last insured and [wa]s not relevant to [her] level of functioning at that time." (*Id.*). And regardless, an ALJ is
not required to entertain a speculative possibility of an impairment by calling for medical expert testimony, as the
burden is on Plaintiff to support her case with medical evidence to support finding any impairment "severe" between
April 1, 2014, and March 31, 2015. *See Sykes*, 228 F.3d at 263 (citing *Yuckert*, 482 U.S. at 146 n.5). As the
Commissioner highlighted, Plaintiff failed to offer "evidence supporting additional limitations she believes are
warranted—despite her burden of proving her functional limitations." (Opp. Br. at 16).

crouch. (*Id.* at 394). Further, the ALJ found that Plaintiff could never crawl or climb ladders, ropes, or scaffolds. (*Id.*). The ALJ did not err in her articulation of Plaintiff's RFC by omitting an explicit opinion on each element of the "light work" exertional level. This is particularly so given that the ALJ's detailed RFC analysis clearly referenced tasks relevant to the "light work" analysis. *See Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021). Accordingly, the ALJ considered all the relevant evidence and rendered an RFC finding with a clear and satisfactory explication of the substantial bases upon which it rests, which is all she was required to do. Additionally, the ALJ's discussion detailed above reflects that, when explaining why Plaintiff was capable of performing light work, the ALJ implicitly concluded, consistent with the elements of the "light work" exertional level, that Plaintiff could stand/walk for approximately six hours in an eight-hour workday and could lift no more than 20 pounds at a time and could only frequently lift or carry objects weighing up to 10 pounds. *See* 20 C.F.R. § 404.1567(b); S.S.R. 83-10; *Cox v. Comm'r of Soc. Sec.*, No. 17-8658, 2018 WL 6499866, at * 6–7 (D.N.J. Dec. 10, 2018) ("In this case, the ALJ determined that Plaintiff was capable of unskilled work at the light exertional level. That meant Plaintiff was able to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . implicit in the finding that Plaintiff was capable of light work is the acknowledgment that all his impairments—including his severe impairment of the left wrist—were physically limiting to that degree."); *Granados*, 2014 WL 60054, at *10 nn.8, 9 ("Implicit in the ALJ's finding that [p]laintiff could perform sedentary work is the finding that [p]laintiff could sit for six hours in an eight-hour workday . . . [and] that [p]laintiff could stand for two hours in an eight-hour workday." (citing SSR 96–9p)). Based on the analysis contained within the ALJ's 2021 decision, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

Plaintiff suggests that the ALJ must do more to explain why she retains the ability to work at the exertional level required by light weight.  (Mov. Br. at 28–29).  The law does not hold the ALJ to such a rigid standard.  Ultimately, the ALJ held that Plaintiff's description regarding "the intensity, persistence[,] and limiting effects" of her conditions were not "entirely consistent" with the medical evidence in the record.  (R. at 395).  While Plaintiff asserts that the RFC determination was incorrectly made, the ALJ considered all relevant evidence to arrive at her decision, including Plaintiff's testimony, medical professional testimony, and medical tests and reports.  The fact that the ALJ did not engage in a formulaic explanation of her RFC decision in the way Plaintiff suggests does not indicate that her decision was not supported by substantial evidence.

**V.    CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner.  An appropriate Order follows.

**Dated**: January 13, 2025                                       _s/ Esther Salas_
                                                                **Esther Salas, U.S.D.J.**